# CHARLESTON.

## WILSON *v.* TOWN OF PHILIPPI.

Submitted January 30, 1894.—Decided March 21, 1894.

1. TAXES—MUNICIPAL CORPORATIONS—INJUNCTION.

A court of equity will not enjoin the collection of a tax assessment on a town lot to pay for the construction of a sidewalk in front of the same, ordained by the council of an incorporated city or town, on the sole ground that such tax or assessment is illegal; some additional circumstances bringing the case under some recognized head of equity jurisdiction must also appear.

2. TAXES—MUNICIPAL CORPORATIONS—INJUNCTION.

The fact, that the statute declares that such assessment made for constructing a sidewalk shall be a lien on the lot, in front of which the same is constructed, does not create such a cloud upon the title as to confer equitable jurisdiction..

3. TAXES—MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW.

Section 34 of chapter 47 of the Code authorizing the council of a city or town, where the owner of property adjacent to a sidewalk fails or refuses to pave such sidewalk, to cause the same to be done at the expense of the city, town or village, and to assess the amount of such expense upon such owner, to be collected in the manner provided for the collection of the city, town or village taxes, *held* not repugnant to the constitution.

W. T. ICE and DAYTON & DAYTON, for appellant, cited Code, c. 47, s. 34; Code, c. 47, s. 36; Constitution Art. X. ss. 1, 9; Constitution, Art. III. s. 10; 16 S. E. Rep. 730; Dill. Munic. Corp. (3d. Ed.) 754 and note; 24 Am. Rep. 308; 114 Ind. 429 (5 Am. St. Rep. 637); 20 Am. St. Rep. in note 554; 74 N. Y. 183 (30 Am. Rep. 289); Ell. Roads and Streets, 397-400; 28 W. Va. 698; 13 Gratt. 88; 4 W. Va. 499; Bank *v.* Philippi, (not yet reported.)

J. H. WOODS, for appellee.

I.—*On estoppel of plaintiff.*—*Equity has no jurisdiction.*—Douglas &c. *v.* The Town of Harrisville, 9 W. Va. 162; Kuhn *v.* Board of Education, 4 W. Va., 499; Elliott Roads and Streets, 419–423; 398, 393.

II.—*If assessment law is unconstitutional, there is no cloud and equity has no jurisdiction.*—Code, c. 47, s. 28; 14 N. Y. 534, 538; 48 N. Y. 486; 59 N. Y. 280; 74 N. Y. 183 (30 Am. State Rep. 289); 22 Am. State Rep. 345.

III.—*Constitution of Virginia distinguished from constitution of West Virginia.*—16 S. E. Rep. 30; Cons. Va. Art. X, Sec. 1; 13 Gratt. 577.

IV.—*Assessment laws constitutional in Ohio under constitution like West Virginia.*—19 Ohio (Griswold) 418.

ENGLISH, JUDGE :

On the 14th day of March, 1893, Lewis Wilson, a resident of the town of Philippi, Barbour county, obtained from the Judge of the Circuit Court of said county an injunction restraining and enjoining the said town of Philippi and John H. Daniels, sergeant and tax collector thereof, from the collection of the sum of one hundred and sixty three dollars and twenty five cents assessed against him for furnishing sand and brick and paving in front of lots Nos. 80 and 43 in said town having a frontage of three hundred and ninety three and one third feet on Main street in said town. The plaintiff, in his bill, alleged, among other things, that said town by its sergeant was seeking to collect said assessment, which was illegal;—that by the laws of this state the said assessment made by the council of said town constitutes a lien on the plaintiff's real estate, and as such has priority over all other liens except taxes due the state, county and district and also creates a cloud upon the title of said real estate, which it is the peculiar province of a court of chancery to remove, in case it has been improperly assessed;—that by the organic law of this state the said town of Philippi is prohibited from making any assessment or laying any levy for purposes of taxation, which are not equal and uniform with respect to persons and property within the jurisdiction of said town ;—that but few of the lot-owners on said Main street or in said town had been required to build and construct the pavement in front of their respective lots, and to impose such an unequal burden upon the plaintiff and a

few of the citizens of said town would be to their great wrong and injury;—that the law of this state and the ordinance of said town authorizing such a proceeding are. unconstitutional and confer no authority upon said town to enforce said illegal demand against the plaintiff and others who had been singled out for such illegal assessments.

The defendant, the town of Philippi, demurred to the plaintiff's bill for want of equity and also filed its answer putting in issue all the material allegations of the plaintiff's bill. The plaintiff replied generally. Depositions were taken and filed by both the plaintiff and defendant; and on the 1st day of August, 1893, a decree was made in vacation upon notice dissolving said injunction. From this decree this appeal was taken.

Under our statute (Code, c. 47, s. 28) the council of a town or village has power therein to "lay off, vacate, close, open, alter, curb, pave and keep in good repair * * * streets * * * sidewalks, crosswalks, drains and gutters for the use of the public and to order the sidewalks to be curbed and paved and kept in good order, free and clean by the owners or occupants thereof, or of the real property next adjacent thereto," *etc.;* and section 34 of the same chapter provides that, "if the owner or occupant of any sidewalk, footway or gutter in such city, town or village, or of the real property next adjacent thereto, shall fail or refuse to curb, pave or keep the same clean, in the manner or within the time required by the council, it shall be the duty of the council to cause the same to be done at the expense of the city, town or village, and to assess the amount of such expense upon such owner or occupant, and the same may be collected by the sergeant in the manner therein provided for the collection of the city, town or village taxes."

Under these sections, the town of Philippi, having paved the sidewalk in front of the appellant's lots, was proceeding to collect the cost of said improvement from him when it was restrained from so doing by the order of injunction aforesaid.

The first error assigned by the appellant is the action of

the judge in dissolving said injunction. Did the judge of the Circuit Court err in so ruling?

. This question was before this Court in the case of *Douglass* v. *Town of Harrisville*, 9 W. Va. 162, and in that case HAYMOND, JUDGE, delivering the opinion of the court said : "I will proceed to ascertain whether the plaintiff's case, as it appears [and the facts in that case were identical with the one at bar], is one proper for the interposition of a court of equity by injunction. A court of equity will not restrain the collection of an assessment or tax imposed by an incorporated town on the sole ground that the tax is illegal. There must exist, in addition, special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the assessment or tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud upon the plaintiff's title, or the like;" and this language is incorporated in the sixth point of the syllabus in that case.

We also find that Dilllon on Municipal Corporations (volume 2, 4th Ed.) states the law upon this point as follows :

"§ 906. Courts of equity will sometimes interfere to prevent the municipal authorities from transcending or from making a wrongful use of their powers, and will in proper cases relieve against their unauthorized or wrongful acts ; but, on a principle well known in our jurisprudence, there must, in the absence of controlling legislation, be some distinct ground or head of equity to justify a resort to this jurisdiction—such as a want of an adequate remedy at law, multiplicity of suits, irreparable injury, frand, breach of trust, or the like."

"§ 907. Usually the question whether municipal and public corporations are acting or have acted within the limits of the authority which the law confers upon them involves an examination of purely legal principles unmixed with equity. Therefore the court of chancery has no general jurisdiction to restrain, review, or set aside, even if irregular or illegal, the proceedings of such a corporation. Such jurisdiction belongs, except in special cases, which

will be mentioned, and which generally relate to the rights of property or other private rights of the citizen, to the supervisory power and control of the common-law courts."

See, also, section 923 on the same subject, and the authorities cited in note 1.

The questions involved in this case were also to some extent considered in the *State Railroad Cases* reported in 92 U. S. 575, where it was held: "While this Court does not lay down any absolute rule limiting the powers of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equity jurisdiction, and that neither illegality nor irregularity in the proceedings, nor error or excess in the valuation, nor the hardship or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after payment of the tax, will authorize an injunction against its collection."

Again, in the case of *Daws* v. *City of Chicago*, 11 Wall. 108, it was held: "A suit in equity will not lie to restrain the collection of a tax on the sole ground that the tax is illegal. There must exist, in addition, special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate throw a cloud upon the title of the complainant."

These cases, as we understand them, refer particularly to the collection of taxes, and propound the law where the collection of illegal taxes is sought to be enforced. The mode of procedure against lot owners in a city or town to require them to pay the cost of constructing a pavement in front of the same, as provided for in section 34 of chapter 47 of the Code, must be regarded as one of the police powers of such municipal corporation; and, even if such assessment is to be considered a tax upon the lot-owner, and the rule that such tax is to be equal and uniform is to be applied, it is not to be presumed that any town will construct all of its pavements at the same time or on the same day; and the fact, that lot-owners are required at different times to con-

struct paved walks in front of their lots, should not raise the presumption, that it was the intention of the town-council to impose a burden upon one lot-owner to the exclusion of others ; or that it was not the intention, that the sidewalk should be constructed along the entire street, and the expenses of constructing the same should be collected in the same manner.

The bill in this case alleges that but few of the lot-owners on Main street or in said town had been required to build and construct the pavement in front of their respective lots, and to impose such an unequal burden upon the plaintiff and a few of the citizens of said town would be to their great wrong and injury, and that the law of this state and the ordinance of said town authorizing such a proceeding are unconstitutional and confer no authority upon the said town to enforce said illegal demand against the plaintiff and others, who had been singled out for such illegal assessments.

But, as before stated, although it may be true, that only a portion of the abutting lot-owners had been required to construct sidewalks in front of their lots at the time said bill was filed, *non constat*, that others were not to be so required as the streets might be opened and graded, or that, when so required, the burden of such construction would not bear equally and uniformly upon all such lot-owners.

It is true that such assessments, by our statute, are declared a lien upon the real estate of the owner of such lot from the time the assessment is made ; but the lien thus created does not create such a cloud upon the title as requires the aid of a court of equity to remove it; for, if the assessment is illegal, it may be paid under protest, and recovered back in an action against the officer of the town; and, besides, such lien can not be regarded as a cloud upon the title, unless it had been illegally created.

As to the legality of such assessments, it occurs to us that the most equal and uniform mode of assessing such lot-owners, who refuse to construct pavements in front of their lots, is to charge them with the actual cost of material and labor required to make the improvement.

In the case of *Sands* v. *City of Richmond*, 31 Gratt. 571, it

was held : "The city-council of Richmond has authority, under its charter and the constitution of Virginia to require the owner of a lot upon a street which has been graded, paved, and guttered by the city to pave the sidewalk in front of his lot, and when it is the corner of a street to pave the sidewalk on the side of the lot; and, if the owner does not have the work done within the time prescribed by the ordinance, the city may have it done, and collect the money from him."

STAPLES, J., delivering the opinion of the court in that case draws a distinction between assessments of this character, made for paving and improving the street in front of the lot, and like assessments for constructing a sidewalk, and says : "The real difficulty in this class of cases is not with respect to the power to assess the expense of local improvements upon the property specially benefited thereby, but with respect to the method or basis of apportioning the expense among the property holders adjacent to the improvement. It has been held in a number of cases not allowable to impose upon each owner of a lot upon a street the entire cost of grading and paving the street along its front without reference to any contribution to be made by any other property, but the true mode is to make the street a taxing district, and to apportion the expense of the improvement among the various lots in proportion to their frontage. An opinion was incidentally expressed in accordance with this view in *Norfolk City* v. *Ellis*, 26 Gratt. 224, but the case did not call for a decision of that question ; nor is it necessary to decide it in the present case, for here the assessment is not for the purpose of grading and paving the street, but for paving the sidewalk after the street is graded, guttered, and curbed, including the sidewalk. The city, at its own expense, grades and paves its streets, but requires the owner to pave the sidewalk in front of his lot."

In paving the sidewalks, after the grading is finished, there can be little difficulty in apportioning the expense in an equal and uniform manner between the abutting lot-owners ; while in grading and paving the street, where the ground is uneven and fills are required, it may often occur, that the expense of grading in front of one lot far exceeds

that of grading in front of the adjoining lots, which would render the proper apportionment of the expense between the lot-owners uncertain and difficult. Judge Cooley, in his work on Taxation, strenuously opposes the legality and justice of assessing each lot with cost of improvements in front of it, and says that "from accidental circumstances the major part of the cost of an important public work may be expended in front of a single lot, these circumstances not at all contributing to make the improvements to the lot thus specially burdened more valuable; perhaps even having the opposite consequence." He, however, concedes that a different rule applies to assessments for the construction and repair of sidewalks, and declares that cases of assessment for the construction of walks by the side of streets in cities and other populous places are more distinctly referable to the power of police; that the duty imposed upon the owners is enjoined as a regulation of police, made because of the peculiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing with promptness and convenience the duty of putting them in a proper state, and of afterwards keeping them in a condition suitable for use. Upon these grounds the authority to establish such regulations has frequently been supported. See Cooley, Tax'n, 398, 453. Also *Mayor, etc. v. Maberry*, 6 Humph. 368; Cooley, Const. Lim. 734.

In the case of *Sands v. City of Richmond, supra*, Judge Staples cites the case of *Woodbridge v. City of Detroit*, 8. Mich. 274, 310, in which he says: "Judge Christiancy, while maintaining with great ability the invalidity of an assessment upon the owner to defray the expense of grading and paving the street adjacent to his property, partly upon the ground that such an improvement is for the public benefit, and the owner is entitled to no peculiar use of the street not common to the public, concedes that the same rule does not apply to an assessment for the purpose of paving the sidewalk, in which the adjoining owner is recognized as having a peculiar interest and benefit distinct from that which he enjoys in common with the rest of the community," and in speaking of Judge Cooley's views, he

says: "Whether the learned author is correct in referring the improvement of the sidewalk by the owner to the police power or whether it belongs to the taxing power it is not material to discuss. It is a power exercised by the municipal authorities of perhaps three-fourths of the cities of the United States under their respective charters. It is just and reasonable in itself, and, with a few exceptions, is approved by the whole current of decisions." He further says: "The ordinance of the city of Richmond would seem to be peculiarly favorable to the owners of the lots in merely requiring them to pave the sidewalk after they had been graded at the expense of the corporation, and in the case before us the assessment does not appear to be extravagant, or in excess of the benefits which the owners of the property will probably derive from the improvement. We are therefore of the opinion that the ordinance is not obnoxious to any of the objections based upon the ground of its alleged illegality or unconstitutionality."

The case of *City of Norfolk* v. *Chamberlain*, 89 Va. 196 (16 S. E. Rep. 730) cited by the appellant in his brief, was a case in which the city of Norfolk in a proceeding to condemn certain land in the city for the purpose of opening and widening a street attempted to assess the adjoining landowners with the whole expense of widening and extending said street, which, as we have seen, presents a very different case from the one under consideration, in which the assessment referred alone to the sidewalk.

In the case of *Davis* v. *City of Litchfield*, 145 Ill. 313 (33 N. E. Rep. 888) reported also in 21 L. R. A. 565, a well-defined distinction is drawn between an assessment made for the purpose of improving a street in front of a lot and a like assessment for a sidewalk; and in the notes on that page it is said: "Almost everywhere the right to compel lot owners to build sidewalks is recognized, although otherwise held in regard to other street improvements. This is put in many cases on the basis of police power, but it is suggested that a reasonable basis for it might be generally the proximate justice of the rule of apportionment of benefits, as in ordinary cases the cost would not vary much from the amount of an assessment according to frontage."

In this note numerous authorities in different states are cited and quoted from, upholding the validity of assessment for construction of sidewalks. The case to which this note is appended, was a case, in which abutting lot-owners were assessed for paving and improving the street in front of their lots, and it was held that such contribution can be sustained, if at all, only when made under an express grant by the legislature.

Upon the question of the propriety and legality of local assessments for local improvements upon persons and property benefited, Dillon on Municipal Corporations (volume 2, 4th Ed., § 752) says: "The expense of making local improvements, such as grading and paving or otherwise improving streets and sidewalks, constructing drains, sewers, and the like, is very generally met, in whole or in part, by local assessments authorized to be made upon persons or property benefitted or deemed to be benefited. Legislation of this character, both in respect to its justice and its constitutional validity, has been extensively discussed by the judicial tribunals of nearly every state in the Union. The courts are very generally agreed that the authority to require property specially benefitted to bear the expense of local improvement is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury or be assessed upon the abutting property or other property specially benefitted, and, if in the latter mode, whether the assessment shall be upon all property found to be benefitted, or alone upon the abutters, according to frontage or according to area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency, unless there is some special restraining constitutional provision upon the subject,"—citing *White* v. *People*, 94 Ill. 604; *Dickson* v. *City of Racine*, 61 Wis. 545 (21 N. W. Rep. 620); *In re Centre St.* (Vacation) 115 Pa. St. 247; (8 Atl. 56); and *Norfolk City* v. *Ellis*, 26 Gratt. 224.

In view of the fact that the expense of putting down a sidewalk after the grading and curbing are done may be equally apportioned among the abutting lot-owners in pro-

portion to their frontage, we can see nothing in our statute which is repugnant to the clause of the constitution requiring that taxation shall be equal and uniform; and for this reason, and in the light of the authorities we have cited, we hold the act constitutional and valid.

The bill in the case at bar alleges, that the council of the town of Philippi had graded and curbed the ground in front of the plaintiff's lot, had the brick laid, and pavement fully completed, and was then seeking and claiming the right to collect from him one hundred and sixty three dollars and twenty five cents, the amount of an assessment, which it claims to have made against him for furnishing the sand and brick and having the same placed in said pavement. Said bill further alleges, that said town had caused a statement of said assessment to be issued to him, and that the sergeant of said town was then seeking to enforce collection of said sum from the plaintiff, but states nothing which said sergeant had done in furtherance of said design. It does not allege that even a formal demand had been made, that property had been levied upon, or that such levy was even threatened, or that anything had been done by the council of said town or its sergeant which would cause him irreparable injury. It is neither alleged nor shown, that a multiplicity of suits will result, if the proceeding complained of is not restrained; nor that the cloud upon the title can not be readily removed at law.

Considering the pleadings and circumstances above detailed in connection with the ruling of this Court in the case of *Douglass* v. *Town of Harrisville*, 9 W. Va. 162, that a bill of injunction in equity will not lie to restrain the collection of a tax assessment or tax made or levied by the council of an incorporated town, "on the sole ground that the assessment or tax is illegal," our conclusion is that there was no error in the decree complained of dissolving said injunction, and the same is therefore affirmed with costs and damages.